[Cite as *State v. Evans*, 2014-Ohio-768.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2013-05-047 |
| | : | O P I N I O N |
| - vs - | | 3/3/2014 |
| | : | |
| MIKAL VON EVANS, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 12CR28847

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Craig A. Newburger, 477 Forest Edge Drive, South Lebanon, Ohio 45065, for defendant-appellant

**PIPER, J.**

{¶ 1} Defendant-appellant, Mikal Evans, appeals his convictions in the Warren County Court of Common Pleas for multiple counts of aggravated robbery and a related firearm specification after entering guilty pleas.

{¶ 2} According to facts read into the record at the plea hearing, Evans and two other accomplices entered an apartment armed with an assault style-rifle, a baseball bat, and a

knife. Several occupants were in the apartment when Evans and his codefendants entered, and the three men robbed the occupants of personal property such as laptops, hard drives, video gaming systems, cell phones, and cash.

{¶ 3} The case was initially filed in the Mason Municipal Court, which determined that there was probable cause to bind the case over to common pleas court, and Evans was subsequently indicted on felony charges. The state charged Evans with four counts of aggravated robbery and a single count of aggravated burglary, and each of the five counts included a firearm specification. Evans entered into a plea agreement with the state, wherein he agreed to plead guilty to four counts of aggravated robbery and only one firearm specification. The state agreed to nolle the aggravated burglary charge, as well as the remaining firearm specifications. The state also agreed to suggest a sentence of six years, rather than the possible sentence that Evans could have received, which could have exceeded 55 years.

{¶ 4} At the plea hearing, Evans raised some concerns regarding the way in which he was arrested and originally brought before the municipal court. However, after the trial court spoke to Evans about his concerns, Evans indicated his desire to move forward with the plea agreement. After the trial court's colloquy, Evans pled guilty. The trial court later sentenced Evans to three years in prison for each count of aggravated robbery to be served concurrently, as well as three years on the firearm specification to be served consecutively, for an aggregate sentence of six years. Evans now appeals his convictions and sentence, raising the following assignment of error.

{¶ 5} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY ACCEPTING A GUILTY PLEA WHICH WAS NOT MADE KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY.

{¶ 6} Evans argues in his assignment of error that he did not make his plea

knowingly, voluntarily, and intelligently.

{¶ 7} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 7. Crim.R. 11(C) governs the process whereby a trial court may properly accept a guilty plea in a felony case as being knowingly, intelligently, and voluntarily made. According to Crim.R. 11(C)(2)

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 8} A trial court must strictly comply with Crim.R. 11(C)(2)(c) and orally advise a defendant before accepting a felony plea that the plea waives the defendant's constitutional rights. *Veney* at ¶ 31. When a trial court fails to strictly comply with this duty, the defendant's plea is invalid. *Id.* Regarding the nonconstitutional notifications, a trial court must substantially comply with Crim.R. 11(C)(2)(a) and (b). *Id.* An appellate court reviews the substantial-compliance standard based upon the totality of the circumstances surrounding

the defendant's plea and determines whether he subjectively understood the implications of his plea and the rights he waived. *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, ¶ 20.

{¶ 9} Despite the trial court's colloquy that addressed Evans personally and informed him of the rights he was giving up and the effect of his plea, Evans argues that his plea was not constitutionally sound because the trial court did not adequately address his concerns voiced during the plea hearing.

{¶ 10} Evans asked the trial court to review the arrest warrant and original complaint filed in the municipal court and to determine whether they were valid. At that point, the trial court informed Evans that it would not make a determination on the warrant and complaint because the proper method for challenging the arrest or any evidence was to "file motions with the Court." The trial court then explained that if Evans wished to challenge the investigatory process or the way in which he was arrested and charged, that he should not continue with the plea process.

> I am not going to make a cursory look of the search warrants and all that stuff just to give you an off the cuff sort of opinion about how that is, it's not how it works, so if you don't want to go forward with this plea agreement, then we need to move along a different track. Your case is ready for trial, it's set for trial. We'll have a trial. I don't know that that's in your best interest. If you're innocent and you didn't do anything, it might be in your best interest. Again, I don't know and it doesn't really matter to me how you proceed as long as everybody knows what they're doing.

{¶ 11} Evans then asked for a continuance to discuss the issue with his family, specific to whether he wanted to enter the plea. The trial court noted that the state's plea agreement offer had already technically expired and asked the state whether the offer would be held open any longer. The prosecutor then stated, "as of the moment we walk out of this courtroom today, the plea is off, period." Without any further comments from the trial court or the state, or without any further questions or comments from Evans, Evans stated "Yeah, I'll

take the plea." Neither the fact that the trial court did not look at the warrants and original documentation within the municipal court, nor the fact that Evans was not granted a continuance rendered his plea involuntary.

{¶ 12} The record clearly indicates that Evans signed the plea form, which had all of the information regarding the charges and plea, including the rights Evans was giving up and the sentence he was facing. The trial court gave a complete Crim.R. 11 colloquy after confirming that Evans was educated and had the ability to understand the nature of the plea.

{¶ 13} Within the colloquy, the trial court confirmed that no one had made any threats or promises to force Evans to plead other than the state's offer to nolle the remaining charges and suggest a six-year sentence. The trial court then confirmed that Evans had an opportunity to review the plea agreement with his attorney, and Evans stated that he was satisfied with his attorney's representation. The trial court then reviewed the possible sentence Evans was facing, including postrelease control, and then listed all of the rights Evans was waiving. The trial court's colloquy strictly complied with Crim.R. 11(C)(2)(c) by reviewing all of Evan's constitutional rights in detail, as well as the nonconstitutional notifications contained in Crim.R. 11(C)(2)(a) and (b). Evans stated that he understood each of the rights he was waiving, and never raised any questions or concerns regarding the effect of his plea or the rights he was waiving.

{¶ 14} After the trial court's colloquy and Evans' confirmation of his understanding, the state presented the facts, and Evans did not object to any information about the crimes as presented by the state. The trial court once again asked whether Evans understood the rights he was waiving, and Evans answered "yes." The trial court then asked Evans, "is this what you want to do?" and Evans answered "yes." Evans then pled guilty, and the trial court accepted the plea and bifurcated sentencing for a future date.

{¶ 15} After reviewing the record, Evans made a knowing, intelligent, and voluntary

plea. The trial court correctly told Evans that if he wanted to challenge the pre-arrest investigation or anything concerning his arrest, the proper recourse was to file motions with the court and to litigate the matter. Evans chose not to proceed with motions, and instead, entered his plea despite having been given the opportunity by the trial court to abandon the plea agreement and "move along a different track." Evans' choice to continue with the plea, however, did not make his plea involuntarily given, and the record clearly supports the fact that Evans' plea is constitutionally firm.

{¶ 16} Evans also argues that his plea was not voluntarily made because he expressed other concerns at the sentencing hearing. Again, these concerns were focused upon the proceedings earlier in the municipal court, such as the determination of probable cause before the case was transferred to the common pleas court. Multiple times during the sentencing hearing, the trial court offered Evans the opportunity to withdraw his plea. On one occasion, the following exchange occurred.

> [Trial Court]: I don't have to accept your plea, I can withdraw your plea right now and I can set this case for trial. I do not want to do that, because that means that a lot of people have to do a lot of work and we might end up in the same place, because you don't even deny that you did this.
>
> [Evans] You're right. * * * I can be guilty, but if the law is not being upheld to the highest ability, like it's supposed to be, then the guilty may sometimes escape punishment. I am not saying that I am not guilty. * * * I know I'm guilty. * * *

At that point, Evans continued to discuss his perceived issues with the warrant and proceedings before the municipal court. After Evans expressed a desire to continue a dialog with the trial court, the trial court stated, "you seem to be indicating to me that you want to exercise all of your constitutional rights in this case." Evans then responded, "No, sir." The trial court again offered to "set aside this plea * * * and set this for trial." Once again, Evans responded. "No, sir."

{¶ 17} Evans asked the trial court to dismiss the charges against him, while

simultaneously refusing to withdraw his guilty plea and emphatically expressing a desire to maintain the guilty plea his attorney had negotiated. The trial court went so far as to offer to appoint new counsel and even told Evans that it was going to withdraw the plea so that Evans could move forward with the trial. Evans, however, again declined to withdraw his plea, stating instead that he would rather be sentenced so that he could take his case to the Supreme Court.

{¶ 18} At the time the pleas were entered, it is clear Evans knew what he was doing. When sentenced, Evans may have been difficult to some extent, but he was adamant in keeping his guilty pleas in place. In light of the crimes that Evans committed, and the potential sentence, Evans intelligently understood what the plea arrangement meant and what he was doing in pleading guilty.

{¶ 19} Statements made at the sentencing hearing do not reveal that at the time of the plea Evans did not knowingly, intelligently, and voluntarily enter his guilty plea. The sentencing portions of the transcript reveal that Evans declined multiple offers by the trial court to withdraw his guilty pleas. Evans wanted a dismissal of the charges against him, hoping to escape criminal liability because of what he perceived were technical issues with the warrants, while also wanting to pursue the benefit of the plea arrangement. Evans never denied his guilt for the offenses, and he declined the opportunity to withdraw his plea so that he could challenge his perceived technical issues.

{¶ 20} After reviewing the record, Evans' plea was made knowingly, intelligently, and voluntarily and was therefore properly accepted by the trial court. As such, Evans' single assignment of error is overruled.

{¶ 21} Judgment affirmed.

RINGLAND, P.J., and HENDRICKSON, J., concur.